UNITED STATES of America, Appellee,

v.

**William IVEY, Appellant.**

UNITED STATES of America, Appellee,

v.

**Mary JOHNSON, Appellant.**

UNITED STATES of America, Appellee,

v.

**James NANCE, Appellant.**

Nos. 89–1540, 89–1592 and 89–1953.

United States Court of Appeals,
Eighth Circuit.

Submitted May 16, 1990.

Decided Sept. 27, 1990.

Rehearing and Rehearing En Banc Denied in No. 89–1540 Nov. 6, 1990.

**382**

Robert L. Sikma, Sioux City, Iowa, for appellant Nance.

Timothy T. Jarman, Sioux City, Iowa, for appellant Johnson.

Stanley E. Munger, Sioux City, Iowa, for appellant Ivey.

Michael M. Hobart, Sioux City, Iowa, for U.S.

Before BOWMAN and WOLLMAN, Circuit Judges, and STUART,* Senior District Judge.

WOLLMAN, Circuit Judge.

William A. Ivey, Mary Johnson and James E. Nance appeal their convictions for cocaine-related offenses. We affirm.

## I.

On November 22, 1986, Ivey drove Johnson, Marcia Harris, and Mary Hogan to the Federal Express office in Sioux City, Iowa, to pick up a package apparently addressed to Mary Hogan. Because of a smeared label and incorrect address, Federal Express had earlier misdelivered the package to the Ben Fish Tire Company. An employee there opened it and discovered a white powdery substance that appeared to be cocaine. The box and its contents were returned to the Federal Express office, and the police were notified. After determining that the package was probably for Mary Hogan, the police staked out the Federal Express office and contacted Hogan by telephone, notifying her that there was a package for her at the office.

Ivey, Johnson, and Harris waited in Ivey's car while Hogan entered the Federal Express office. Police arrested Hogan after she had received the package and was about to leave. They also arrested Ivey, Johnson, and Harris outside the office. At the police department an officer searched Johnson's purse. While booking Ivey, police found two "seals" of cocaine in his billfold.

In an investigation following the arrests, police discovered Federal Express records showing that Harris and Johnson had sent and received a number of packages, as well as telephone company records showing calls over a period of several months between Johnson's and Harris' residence in Sioux City and Nance's residence in Miami,

---

* The HONORABLE WILLIAM C. STUART, United States Senior District Judge for the Southern District of Iowa, sitting by designation.

Florida. The police also discovered four money transfers ranging from $2,800 to $4,500 to Nance from Harris and Johnson. The district court found that the final transfer of $4,500 from Harris to Nance on November 18, 1986, was for the purchase of cocaine, but also ruled that the government failed to prove the purpose of the other transfers.

In addition, the police discovered a latent fingerprint matching Nance's on the outside of the box containing the cocaine that was inside the Federal Express package Hogan picked up when arrested. The package also contained crumpled newspapers from Miami.

A grand jury indicted Nance, William Ivey, Johnson, and Hogan, as well as Nancy Ivey, William Ivey's wife, on a variety of charges stemming from the Federal Express incident. Defendants waived their right to a jury trial. The district court acquitted Nancy Ivey of all charges. The court found William Ivey, Harris, Hogan, Johnson, and Nance to be members of a conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846. The court also found Nance and Hogan guilty of knowingly and intentionally possessing cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and Harris, Johnson and Ivey guilty of aiding and abetting Hogan's possession in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. In addition, the court also found Harris guilty of knowingly and intentionally using a communication facility to purchase cocaine and Hogan guilty of perjury while under oath before a grand jury.

In the same decision, the district court ruled that Ivey, Harris, and Johnson had been arrested on November 22 without probable cause. It further found that police had improperly searched Johnson's purse at the time of her arrest and suppressed its contents as evidence against her but not against the other defendants.

Johnson moved for a hearing, contending that other evidence the government introduced against her at trial should be suppressed as "fruit of the poisonous tree."

The court granted a post-trial hearing and allowed the introduction of further evidence. Sergeant Charles Noltze of the Sioux City Police Department testified that for some time prior to the November 22, 1986, arrests the police department was aware that Johnson had been sending large sums of money via Western Union to Nance in Miami, Florida. In early September of 1986, the police department had obtained a warrant and searched Johnson's apartment. Although they did not discover any evidence of drugs, they found a Federal Express package addressed to Johnson from a party in Miami, Florida. Sergeant Noltze admitted, however, that he had not contacted Western Union or Federal Express about Johnson prior to November 22, 1986.

The court amended its findings of fact in a March 7, 1989, order, suppressing additional exhibits and testimony, but finding that defendants' convictions remained supported by sufficient evidence and that the government had an ongoing investigation before November 22, 1986, that would have independently garnered evidence of Johnson's involvement in the conspiracy even if the police had not searched her purse.

As indicated above, only Ivey, Johnson, and Nance appeal from their convictions.

## II.

Appellants contend that the evidence is insufficient to support their convictions. When reviewing for sufficiency, we examine the evidence in the light most favorable to the government, giving it the benefit of all reasonable inferences. *United States v. Shurn*, 849 F.2d 1090, 1093 (8th Cir.1988). We reverse only if we conclude that a reasonable fact-finder must have entertained a reasonable doubt about the government's proof of one of the offense's essential elements. *Id.*

### A.

Appellant Ivey was found guilty of conspiracy and aiding and abetting. To convict a defendant of conspiracy, the government must prove beyond a reason-

able doubt that there was an agreement to achieve some illegal purpose, that the defendant knew of the agreement, and that the defendant knowingly became a part of the conspiracy. *United States v. Matlock,* 786 F.2d 357, 360 (8th Cir.1986). The agreement need not be express or formal. *Id.* Rather, because the nature of conspiracy entails secrecy, the agreement and members' participation in it must often be established by way of inference from the surrounding circumstances. *United States v. Gooden,* 892 F.2d 725 (8th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 2594, 110 L.Ed.2d 274 (1990); *United States v. Raymond,* 793 F.2d 928, 931 (8th Cir.1986). Once a conspiracy is established, even slight evidence connecting a defendant to the conspiracy may be sufficient to prove the defendant's involvement. *United States v. Garcia,* 785 F.2d 214, 225 (8th Cir.), *cert. denied,* 475 U.S. 1143, 106 S.Ct. 1797, 90 L.Ed.2d 342 (1986). Evidence of association or acquaintance, though relevant, is not enough by itself to establish a conspiracy. *United States v. Apker,* 705 F.2d 293, 298 (8th Cir.1983); *reh'g granted on other grounds sub nom. United States v. Fitzgerald,* 724 F.2d 633 (8th Cir.1983), *cert. denied,* 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 538 (1984).

■ The district court pointed to the following evidence when convicting Ivey of conspiracy:

(1) Ivey drove the car to the Federal Express office on November 22 to pick up the cocaine.

(2) On a number of occasions Ivey had been exchanging small bills for large bills at a Sioux City bank. Although he told one bank employee that the small bills represented tip money from his job as a waiter, there was "no competent testimony to show that he had any waiter's job." Sept. 16, 1988, Memorandum Opinion at 12 (footnote omitted).

(3) Ivey bought a $17,000 car in July 1986.

(4) When considering money he received from his mother, his wife's salary, his new car purchase, and his living expenses, Ivey's exchange of bills revealed that he had more money than could be accounted for.

(5) Telephone company records showed that a telephone call from Ivey's residence was made to Nance's residence on September 4, 1986.

(6) Police found two grams of cocaine on Ivey's person at the time police arrested him. The court dismissed the possession charge, concluding that the amount of cocaine was too small to distribute.

(7) Ivey express mailed money out of Sioux City and also received some money by express mail.

The money exchanges, the car purchase, the Federal Express packages, the phone call, the driving to the Federal Express office, and the cocaine Ivey possessed at booking are evidence of Ivey's involvement in the conspiracy. After examining this evidence in the light most favorable to the government, giving the government the benefit of all reasonable inferences, we cannot say that the district court must have entertained a reasonable doubt as to Ivey's guilt on the conspiracy charge. Accordingly, we affirm Ivey's conviction on that count.

■ To establish aiding and abetting liability under 18 U.S.C. § 2, the government must prove that the defendant had a "purposeful attitude," defined as affirmative participation which at least encourages the perpetrator. *United States v. Baumgarten,* 517 F.2d 1020, 1027 (8th Cir.), *cert. denied,* 423 U.S. 878, 96 S.Ct. 152, 46 L.Ed.2d 111 (1975). As the district court found, Ivey drove Hogan and the others to the Federal Express office on November 22. Although mere presence at the scene of a crime is not sufficient to make one an aider or abettor, *United States v. Holt,* 427 F.2d 1114, 1117 (8th Cir.1970), when viewed in the light of the evidence establishing Ivey's involvement in the conspiracy, the evidence establishing Ivey's guilt on the aiding and abetting count, although certainly not overwhelming, was sufficient to sustain the conviction.

### B.

Like Ivey, appellant Johnson challenges her convictions for conspiracy and for aiding and abetting. Unlike the evidence against Ivey, however, the government's case established Johnson's substantial involvement in the conspiracy. The evidence showed that Johnson had sent money to Nance on numerous occasions and that she had received Federal Express packages in the past similar to the package Hogan received on November 22. Harris was sending money to Nance in a similar manner, including the money she sent on November 18, which the district court found to have been for the purchase of the cocaine Hogan received on November 22. Thus, in Johnson's case, the evidence linked her to the source of the cocaine and supports the reasonable inference that she was an active member of the conspiracy.

As with Ivey's aiding and abetting conviction, the district court convicted Johnson on the basis of her presence at the Federal Express office on November 22. In addition to her presence at the scene of the crime, however, the evidence establishing Johnson's participation in the conspiracy also proved her affirmative purpose to carry out the scheme involving Hogan's receipt of the cocaine on November 22. Therefore, we uphold her conviction on the aiding and abetting count as well as the conspiracy count.

### C.

Appellant Nance challenges his convictions for conspiracy and for possessing cocaine with the intent to distribute. In reviewing the evidence against Nance, the district court noted that Nance's fingerprint was on the package Hogan picked up at the Federal Express office, that Nance had used his driver's license number to identify himself when he picked up money sent to him, and that telephone calls between Nance, Johnson, and Harris coincided with these events. This evidence supports reasonable inferences that Nance's relationships with co-conspirators and his own activities were a vital part of the conspiracy's operations and that his own possession of cocaine brought them about.

### III.

Johnson asserts that police discovered the Western Union, Federal Express, and Northwestern Bell records admitted against her only after searching her purse at the time of her arrest. Because the district court later found the search illegal and suppressed evidence obtained from it, Johnson contends that the records admitted against her were "fruit of the poisonous tree" and should also have been suppressed. She contends that the district court erred in ruling that the government had met its burden of proving "inevitable discovery" of the evidence. The inevitable discovery exception to the exclusionary rule applies when the government establishes by a preponderance of the evidence that the evidence discovered by unlawful means would have been discovered by lawful means in any event. *Nix v. Williams*, 467 U.S. 431, 443–44, 104 S.Ct. 2501, 2508–09, 81 L.Ed.2d 377 (1984).

We find no error in the district court's ruling. The evidence shows that an alternate line of investigation existed prior to the November 22 arrests. The police had suspicions that Johnson was dealing in drugs for some time, as shown by their execution of a search warrant at Johnson's home in September. Although the police did not find evidence of drug trafficking at that time, they discovered a Federal Express package similar to the one Hogan received on November 22. In addition, the police had been informed that Johnson had been sending large amounts of money by Western Union. Thus, the police were suspicious of her activities and had a number of leads—her association with Hogan, her presence at the Federal Express pick-up, knowledge that she was wiring large amounts of money, and the Federal Express box already found in her apartment— with which to discover the evidence admitted against Johnson at trial. Accordingly, we conclude that the district court properly applied the inevitable discovery doctrine.

The judgment is affirmed.