**United States Court of Appeals**

**FOR THE EIGHTH CIRCUIT**

_____

No. 96-3972

_____

United States of America,           *
                                    *
          Plaintiff-Appellee,       *    Appeal from the United States
                                    *    District Court for the
     v.                             *    District of Nebraska.
                                    *
Jose Cabrera, aka                   *
Jose Cabarra,                       *
                                    *
          Defendant-Appellant.      *


_____

Submitted: March 11, 1997
   Filed:   July 7, 1997

_____

Before MAGILL,[1] JOHN R. GIBSON, and MURPHY, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.


In March 1996, Jose Cabrera was charged with conspiracy to distribute and possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) (1994) and 846 (1988). Cabrera entered a plea of not guilty, and the case

_____

[1]The Honorable Frank J. Magill was an active judge at the time this case was submitted, and assumed senior status on April 1, 1997, before this opinion was filed.

was tried to the district court[2] after Cabrera waived his right to a jury trial. The court found Cabrera guilty as charged, and he was sentenced to a term of 151 months in prison and five years of supervised release. In this appeal, Cabrera alleges that the government failed to produce sufficient evidence to support a finding of guilt beyond a reasonable doubt. He challenges the credibility of the government's witnesses and argues that the evidence falls short of proving a conspiracy. We affirm the district court's verdict.

The standard under which we consider whether a criminal conviction is supported by the evidence is well-settled. "In reviewing the sufficiency of the evidence to support a guilty verdict, we look at the evidence in the light most favorable to the verdict and accept as established all reasonable inferences supporting the verdict. We then uphold the conviction only if it is supported by substantial evidence." United States v. Black Cloud, 101 F.3d 1258, 1263 (8th Cir. 1996); see also Glasser v. United States, 315 U.S. 60, 80 (1942).

To obtain a conviction for conspiracy, "the government must prove beyond a reasonable doubt that there was an agreement to achieve some illegal purpose, that the defendant knew of the agreement, and that the defendant knowingly became a part of the conspiracy." United States v. Ivey, 915 F.2d 380, 383-84 (8th Cir. 1990); see also United States v. Maejia, 928 F.2d 810, 813 (8th Cir. 1991). Merely proving that the defendant knew of the existence of the conspiracy is insufficient to support a conviction for conspiracy; "rather, '[the government] must establish some degree of knowing

---

[2]The Honorable Lyle E. Strom, United States Senior District Judge for the District of Nebraska.

involvement and cooperation.'" United States v. Fregoso, 60 F.3d 1314, 1323 (8th Cir. 1995) (quoting United States v. Casas, 999 F.2d 1225, 1229 (8th Cir. 1993), cert. denied, 510 U.S. 1078 (1994)). Moreover, it is "well established that 'a mere sales agreement with respect to contraband does not constitute a conspiracy; there must be some understanding 'beyond' that before the evidence can support a conviction for conspiracy.'" United States v. Issaghoolian, 42 F.3d 1175, 1178 (8th Cir. 1994) (quoting United States v. West, 15 F.3d 119, 121 (8th Cir.), cert. denied, 513 U.S. 863 (1994)).

The government is not required to prove that an express agreement existed. "[R]ather the government need only establish a tacit understanding between the parties, and this may be shown wholly through the circumstantial evidence of [the defendant's] actions." Fregoso, 60 F.3d at 1325. "[B]ecause the nature of conspiracy entails secrecy, the agreement and members' participation in it must often be established by way of inference from the surrounding circumstances." Ivey, 915 F.2d at 384. "Once a conspiracy is established, even slight evidence connecting a defendant to the conspiracy may be sufficient to prove the defendant's involvement." Id.

At Cabrera's two-day trial, the government presented the testimony of two law enforcement officers and five other witnesses. On appeal, Cabrera emphasizes that each of the five other witnesses was a drug user, four of them had prior felony convictions, two had plea agreements with the government and had been granted reductions in their sentences for cooperating, one witness expected a similar arrangement with the government when he was sentenced, and two witnesses had

received non-prosecution agreements in exchange for testifying.[3]  These facts are, of course, highly relevant in assessing the credibility of the witnesses.  See  United States v. Roan Eagle, 867 F.2d 436, 443-44 (8th Cir.), cert. denied, 490 U.S. 1028 (1989).  Both the prosecution and the defense presented this evidence to the district court, which is charged with assessing the credibility of the witnesses.  An appellate court is "not in the best position to judge the credibility of witnesses.  It is for [the fact-finder] to assess the credibility of witnesses and resolve conflicting testimony."  United States v. Cunningham, 83 F.3d 218, 222 (8th Cir. 1996).  Accordingly, we may reverse the conviction below only if we review the evidence under the standard described above and conclude "that a reasonable fact-finder must have entertained a reasonable doubt about the government's proof of one of the offense's essential elements."  Ivey, 915 F.2d at 383.

The government identified the time frame of the conspiracy as January 1994 through September 1995. The Bassetts, Harris, Vieyra, and Olguin were associated with Cabrera during this time period and testified that he sold them methamphetamine which they used or resold to others.  Although Cabrera spoke little English, they managed to communicate with limited English or Spanish,  with a translation book or computer, or through Cabrera's wife.  The drug transactions were conducted in a Grand Island, Nebraska trailer court, where Cabrera resided, and later at an Alda, Nebraska trailer court after Cabrera moved there.  The Grand Island trailer court served as a base

---

[3]Mark Bassett, Delbert Harris, Roy Vieyra, and Cindy Olguin had prior felony convictions.  Bassett and Harris had plea agreements with the government and the government's downward departure motions had been granted.  Vieyra hoped to reach a similar agreement.  Sharon Bassett and Olguin had reached non-prosecution agreements with the government.

of operations for several drug dealers.

Mark Bassett testified that he purchased methamphetamine from various individuals identified as Nacho, Javier Para-Cardenas, and George at the Grand Island trailer court. Cabrera was present on at least one occasion when Bassett purchased methamphetamine from Nacho. Bassett met Cabrera in the summer of 1994 at the Grand Island trailer court and began purchasing methamphetamine from him on a regular basis, approximately every other day. Cabrera then moved to the Alda trailer court, and Bassett purchased methamphetamine from Cabrera at that location every other or every third day. Bassett purchased larger quantities of methamphetamine from Cabrera at the Alda location than in Grand Island because by then Bassett was both using and selling more of it. Bassett also saw Cabrera provide methamphetamine on two or three occasions to Bassett's acquaintance Delbert Harris, and on one occasion to a woman named Barb.

Bassett testified that Cabrera occasionally did not have methamphetamine on hand at his Alda residence to sell to Bassett. When this occurred, Bassett would drive Cabrera back to the Grand Island trailer court to obtain methamphetamine from other suppliers. During one of these trips, Greg Goltz, a Nebraska State Patrol trooper, stopped Bassett and Cabrera because of a broken windshield. Goltz testified that he searched the car both by hand and with a drug detection dog. Although the dog alerted to the odor of a controlled substance in the area, no controlled substance was found. Bassett testified, however, that he and Cabrera had purchased one half ounce of methamphetamine before being stopped by Goltz, and that Cabrera had hidden it under the car seat. Following the search, Goltz remained suspicious and therefore followed

the car to the Alda trailer court. After Bassett and Cabrera returned to Cabrera's trailer, Bassett observed Goltz and his dog at a nearby trailer. Fearing a drug raid, Bassett and Cabrera flushed the methamphetamine down the toilet at Cabrera's trailer.

In all, Bassett estimated that he bought methamphetamine from Cabrera at the Grand Island trailer court more than twenty times and that his purchases from Cabrera at both trailer courts totaled approximately three pounds. Bassett stopped buying methamphetamine from Cabrera sometime after February 1995 when Cabrera moved from Alda to Kansas.

Bassett's wife, Sharon Bassett, and Delbert Harris sometimes accompanied Bassett when he purchased methamphetamine from Cabrera. Sharon Bassett testified that she was with her husband and Cabrera on a couple of occasions when they drove from Alda to Grand Island so that Cabrera could obtain more methamphetamine at the Grand Island trailer court.

Delbert Harris testified that he met Cabrera sometime after May 1994 and accompanied Mark Bassett once or twice a week to the Grand Island trailer court where Bassett purchased methamphetamine. After Cabrera moved to Alda, Harris began buying methamphetamine from Cabrera, and purchased once or twice a week for both his own personal use and resale. Sometimes Harris drove Cabrera back to the Grand Island trailer court so that he could obtain more methamphetamine. Harris saw Mark Bassett, Roy Vieyra, and a woman named Barbie with Cabrera on occasion at Cabrera's trailer in Alda.

Roy Vieyra testified that he went with his nephew, Tibrusio Martinez, to the Grand Island trailer court several times so that Martinez could purchase methamphetamine for Vieyra. Around November 1994, Martinez introduced Cabrera to Vieyra so that Vieyra could deal directly with Cabrera. In December 1994, Vieyra began making his own purchases from Cabrera and bought either cocaine or methamphetamine from him on an almost daily basis until January 1995. Vieyra initially purchased methamphetamine from Cabrera for both personal use and resale, but bought only for his own personal use when Cabrera moved to Alda. Vieyra saw Mark and Sharon Bassett at the Alda trailer court and also observed Cabrera give methamphetamine to Delbert Harris.

Cindy Olguin also testified that she had purchased methamphetamine from Cabrera at the Grand Island trailer court. She stated that she had purchased controlled substances at the trailer on forty to fifty different occasions, although most of the purchases were not from Cabrera. Olguin testified that she was the one who initially introduced Mark Bassett to Cabrera.

Vincent Hernandez, an investigator with the Nebraska State Patrol's drug division, arrested Cabrera at his residence in Wichita, Kansas on April 1, 1996. Hernandez testified that Cabrera stated that he was not involved in drug activities in Wichita, but admitted that he and his wife had been involved in drug activities when they lived in Alda.[4]

---

[4]The written report of Officer Hernandez states that Cabrera admitted only that he had lived in Alda, Nebraska and that his wife had been involved in drug activities there, but does not state that Cabrera admitted such involvement. Hernandez was questioned by Cabrera's counsel at trial about this issue, and resolution of this alleged discrepancy was for the district court to resolve. We do not believe that the district court's reliance on Hernandez's testimony was erroneous.

Cabrera argues that the evidence, at most, showed only that various witnesses purchased methamphetamine from Cabrera, but does not rise to the level of showing a conspiracy to distribute and possess with the intent to distribute methamphetamine. Cabrera relies upon United States v. West, 15 F.3d 119 (8th Cir.), cert. denied, 513 U.S. 863 (1994), in which this court reversed the defendant's conspiracy conviction. Id. at 121. In West, the evidence showed only that the defendant sold drugs to two people for their own use and that the two buyers did not know each other. Id.

The circumstances of this case are far different from those in West. The evidence reveals that Cabrera sold methamphetamine to multiple people on numerous occasions for both personal use and resale. Most of the witnesses who purchased from Cabrera had relationships with or knew of each other.[5] Cabrera maintained contacts at the Grand Island trailer court after he moved so that he had a steady supply of methamphetamine to sell. These transactions were not a series of isolated sales but were part of an agreement between Cabrera and others, in which Cabrera was a voluntary and knowing participant, to buy and sell methamphetamine.

---

[5]Mark and Sharon Bassett were married. Sharon Bassett and Delbert Harris had been romantically involved. Mark Bassett and Delbert Harris formerly had been friends. Mark Bassett and Cindy Olguin were acquainted, and she helped him obtain methamphetamine. Olguin said that Cabrera's wife Pamela was her "cousin through marriage." Roy Vieyra lived with Cabrera for a time and was a friend of Cabrera's wife.

Cabrera argues that these cooperating witnesses had a motive to aid the government in obtaining a conviction. Their testimony, however, is substantially consistent and corroborated by other evidence.[6] After considering all the evidence in the light most favorable to the verdict, we conclude that it shows that there was an agreement between Cabrera and others, including the five witnesses, to possess with intent to distribute methamphetamine and to distribute methamphetamine, that Cabrera knew of that agreement, and that Cabrera knowingly participated in the agreement. In sum, the evidence establishes beyond a reasonable doubt that Cabrera is guilty of conspiracy to distribute and possession with intent to distribute methamphetamine.

Accordingly, we affirm the judgment of conviction by the district court.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[6]Cabrera does not suggest that these witnesses collaborated on their testimony, and the evidence would contradict such an assertion if it had been made.