UNITED STATES of America, Appellee,

v.

Jose Santos QUINTANILLA, Appellant.

UNITED STATES of America, Appellee,

v.

Juan Torres VELASQUEZ, Appellant.

Nos. 93–2701, 93–2770.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 13, 1993.

Decided June 3, 1994.

---

1. Hogan's remaining contentions of error lack merit.

Colia F. Ceisel, St. Paul, MN, argued, for Jose Santos Quintanilla.

Howard S. Carp, Minneapolis, MN, argued, for Juan Torres Velasquez.

Jeffrey S. Paulsen, Minneapolis, MN, argued (Francis X. Hermann and Jeffrey S. Paulsen, on the brief), for appellee.

Before WOLLMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and LOKEN, Circuit Judge.

WOLLMAN, Circuit Judge.

Juan Torres Velasquez and Jose Santos Quintanilla appeal their convictions and sentences for possessing marijuana with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and for conspiring to distribute marijuana, in violation of 21 U.S.C. §§ 841(b)(1)(B) and 846. Velasquez also appeals his conviction for carrying a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). We affirm the judgments of the district court.[1]

## I.

Velasquez's and Quintanilla's convictions resulted from an undercover investigation involving an informant, Ysidro Mendez. In November 1991, acting pursuant to a tip, police officers stopped Mendez in St. Paul, Minnesota, as he was returning from a trip to collect money for drugs that he had distributed previously. When the police searched his car, they did not find any drugs, but they seized $7000 in cash, $3000 of which Mendez admitted was drug money. Mendez cooperated with the government and was not charged as a result of the stop.

After Mendez had agreed to cooperate, law enforcement authorities directed him to approach Velasquez and to inquire about obtaining marijuana for three fictitious Iowa buyers. Over a period of about one week in January 1992, Mendez negotiated with Velasquez for the sale of approximately 150 pounds of marijuana. Using equipment that the government had provided, Mendez recorded his telephone negotiations with Velasquez as well as one face-to-face meeting. During the negotiations, Velasquez identified Quintanilla, whom Velasquez and Mendez called "Santos," and Quintanilla's father as two of his marijuana suppliers. Velasquez indicated that he preferred to obtain marijuana from Quintanilla's father because Quintanilla charged higher prices and was careless at times. As the negotiations neared completion, Mendez went to Velasquez's residence to pick up a sample. At that time, Velasquez had in his possession ninety-six

pounds of marijuana, none of which he had acquired from Quintanilla. Mendez took a 2.2 pound sample and left. Shortly thereafter, acting upon the authorities' instruction, Mendez telephoned Velasquez and reiterated that his buyers wanted 150 pounds, even if they had to pay a higher price. Mendez suggested that Velasquez get the balance from "Santos," and Velasquez agreed to do so the next day.

Upon completion of the telephone conversion, officers obtained search warrants for Velasquez's and Quintanilla's residences. At Velasquez's house, the officers seized ninety-one pounds of marijuana packaged for distribution, a semiautomatic .380 caliber pistol with a loaded clip but no bullet in the chamber, and two scales. They also seized a deposit slip with "Santos" and the telephone number of Quintanilla's residence written on the back as well as Velasquez's address book which listed Quintanilla's telephone number under the name "Santos." At Quintanilla's residence, the officers seized seventeen pounds of marijuana packaged for sale, a scale, and drug notes documenting the sale of 401 pounds of marijuana. According to the notes, on two prior occasions "Juan" had purchased from Quintanilla forty pounds of marijuana and twenty pounds of marijuana, respectively.

After a jury trial, both defendants were convicted. They now appeal.

## II.

### A. Search of Quintanilla's Residence

Quintanilla argues that the affidavit supporting the warrant application to search his residence contained deliberate or reckless misrepresentations. Without the misrepresentations, Quintanilla contends, the affidavit failed to establish probable cause to search his residence. See *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978).

We first must determine whether this issue has been properly preserved for

1. The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

appeal. Although Quintanilla filed a motion to suppress evidence, he argued only that the warrant application on its face failed to establish probable cause. Quintanilla did not argue to the district court prior to, during, or after trial that the affidavit contained misrepresentations. When evidence presented for the first time at trial might provide a basis for suppressing other evidence, the defendant must bring the new basis to the district court's attention to preserve the issue for appeal. *United States v. Martin,* 982 F.2d 1236, 1241 (8th Cir.1993); *United States v. Longmire,* 761 F.2d 411, 420–21 (7th Cir. 1985). "An appellate court should not rely on evidence first produced at trial to reverse a pre-trial denial of a suppression motion not renewed at trial." *United States v. Hicks,* 978 F.2d 722, 724 (D.C.Cir.1992) (citing 4 Wayne R. LaFave, *Search and Seizure* § 11.1.(b) (2d ed. 1987)). Assuming, as Quintanilla argues, that he did not become aware of the misrepresentations in the affidavit until Mendez testified,[2] Quintanilla, nevertheless, could have brought the issue to the district court's attention during the trial or in a post-trial motion. Accordingly, because Quintanilla has not properly preserved the issue for appeal, we review for plain error.

■ Mendez called the individual about whom he provided information "Santos." Quintanilla argues, therefore, that the use of the name Jose Santos Quintanilla in the affidavit was a deliberate or reckless misrepresentation. Although Mendez testified that he had never met the person whom he called "Santos," he never stated or otherwise indicated that he did not know that "Santos" and Jose Santos Quintanilla were the same person. Accordingly, we find no plain error in the district court's failure to suppress evidence seized from Quintanilla's residence on the ground that the affidavit contained material misrepresentations.

■ Quintanilla also argues that the district court erred by denying his motion to suppress evidence seized from his residence because the affidavit, on its face, did not establish probable cause. We review a district court's ruling on a motion to suppress

evidence for clear error. *United States v. Wold,* 979 F.2d 632, 634 (8th Cir.1992). The affidavit, which summarized the results of an eight-month investigation, established that Quintanilla was a distributor of marijuana and had a large quantity of marijuana in his possession at the time of the warrant application. This information was sufficient to establish a fair probability that contraband or other evidence of a crime would be found at his residence. *See Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Accordingly, the district court did not clearly err in denying Quintanilla's motion to suppress.

## B. *Brady* Violations

■ Both defendants argue that they were denied due process because the government failed to disclose information in its possession that they could have used to impeach Mendez. The government argues that the defendants did not properly preserve the issue for appeal because they did not file a motion for a new trial based upon newly discovered evidence when they became aware of the violation. *See* Fed.R.Crim.Pro. 33. Because we conclude that the government's failure to disclose does not rise to constitutional error, however, we need not address the government's argument.

*Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963), requires the government to produce all material evidence, whether impeachment or exculpatory, *Giglio v. United States,* 405 U.S. 150, 154–55, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972), in its possession that is favorable to the defendant. Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985).

In a pretrial letter to the defendants' attorneys, the government disclosed the following information: Mendez was convicted in 1975 for importing marijuana. Although he

---

**2.** Mendez refused to be interviewed by Quintanil- la's attorney prior to trial.

was paroled after serving a third of his five-year sentence, his parole was revoked and he served eighteen additional months in prison. No controlled substances were found in Mendez's vehicle when he was stopped in November 1991. Because Mendez cooperated, the government did not file any charges as a result of the stop. In January 1992, the government paid Mendez $2000 to relocate his family and $100 for expenses that he had incurred while cooperating with the government.

The defendants became aware that the government had failed to disclose evidence when they received the presentence investigation reports (PSRs). The PSRs, which were prepared using information obtained from the United States Attorney's files, included the following information: In 1991, Mendez was a major distributor of marijuana and cocaine in the Twin Cities area. While under surveillance by drug agents, Mendez had contact with members of a drug distribution organization. When Mendez's vehicle was stopped in November 1991, "[s]everal evidentiary items were seized, including $7,000 in United States currency."

Despite the government's failure to disclose the above information, substantial evidence of Mendez's drug trafficking history as well as the circumstances surrounding his decision to cooperate with the government were before the jury. Mendez testified that at the time his vehicle was stopped in November 1991, he was returning from a trip to Texas to collect money for drugs that he had previously sold. He admitted that he had about $5000 in his vehicle, $3000 of which was drug money. He also admitted that he had been a drug dealer for a long time and acknowledged that he had cooperated with the government to avoid having charges brought against him. Thus, the undisclosed evidence was cumulative and would not have significantly enhanced the defendants' cross examination of Mendez. Accordingly, because the government's failure to disclose all of the information in its possession that could have been used to impeach Mendez does not undermine our confidence in the outcome of the defendants' trial, we find no due process violation. *See United States v. Nelson,* 970

F.2d 439, 442 (8th Cir.) (finding no due process violation when most of information contained in a suppressed polygraph report was elicited during cross examination), *cert. denied,* —— U.S. ——, 113 S.Ct. 293, 121 L.Ed.2d 217 (1992); *United States v. Janis,* 831 F.2d 773, 776 (8th Cir.1987) (holding that government's failure to disclose criminal record of informant did not violate due process when defendant was able to impeach informant), *cert. denied,* 484 U.S. 1073, 108 S.Ct. 1046, 98 L.Ed.2d 1009 (1988).

## C. Sufficiency of the Evidence

 Both defendants argue that the evidence was insufficient to support their convictions for conspiracy to distribute marijuana. When reviewing such a claim, we consider the evidence in the light most favorable to the government, giving it the benefit of all favorable inferences. *United States v. Matra,* 841 F.2d 837, 840 (8th Cir.1988). We will reverse the convictions only if, after applying this standard of review, we conclude that a reasonable fact finder could not have found the defendants guilty beyond a reasonable doubt. *Id.* To convict the defendants of conspiracy, the government must prove that they entered into an agreement and that the agreement had as its objective a violation of the law. *United States v. Watson,* 952 F.2d 982, 988 (8th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1694, 118 L.Ed.2d 406 (1992). The agreement need not be express or formal, however. *Id.* The government must show no more than a tacit understanding among the participants. *United States v. Hernandez,* 986 F.2d 234, 238 (8th Cir.1993). Because the nature of a drug conspiracy requires secrecy, the agreement must often be established by way of inference from the surrounding circumstances. *United States v. Ivey,* 915 F.2d 380, 384 (8th Cir.1990) (citations omitted). "Once a conspiracy is established, even slight evidence connecting a defendant to the conspiracy may be sufficient to prove the defendant's involvement." *Id.*

 Velasquez identified Quintanilla as one of his marijuana suppliers. Although Velasquez preferred to obtain marijuana from Quintanilla's father, drug records seized from Quintanilla's residence documented two

large marijuana transactions between Quintanilla and Velasquez. During his negotiations with Mendez, Velasquez told Mendez that he had spoken with Quintanilla and that Quintanilla could provide as much marijuana as Mendez wanted if Mendez was willing to pay a higher price. According to Velasquez, Quintanilla would telephone later with a specific price. When Mendez went to Velasquez's residence to obtain a sample of marijuana, Velasquez had ninety-six pounds of marijuana on hand that he had acquired from Quintanilla's father. At that time, Velasquez informed Mendez that Quintanilla could supply additional marijuana at a price of $1400 per pound. Shortly after leaving with a sample of marijuana, Mendez telephoned Velasquez to inform him that the Iowa customers had approved of the sample, but they wanted 150 pounds. Velasquez told Mendez that he would get the balance from Quintanilla the next day. Based upon this evidence, we find that a reasonable fact finder could conclude that Velasquez and Quintanilla had agreed that Quintanilla would supply some of the marijuana that Velasquez intended to distribute. *See, e.g., United States v. Sykes*, 977 F.2d 1242, 1247 (8th Cir.1992); *United States v. Schmidt*, 922 F.2d 1365, 1369 (8th Cir. 1991) (per curiam). We therefore reject the defendants' argument that the evidence was not sufficient to support their convictions for conspiring to distribute marijuana.

■ Velasquez also argues that the evidence was insufficient to convict him of using and carrying a firearm during and in relation to a drug trafficking crime. Section 924(c)(1) provides that "[w]hoever, during and in relation to any ... drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such ... drug trafficking crime, be sentenced to imprisonment for five years." Although more than mere possession of a firearm is required for a conviction under this section, the government need not show that the defendant brandished or discharged the weapon. *See, e.g., United States v. Curry*, 911 F.2d 72, 79 (8th Cir. 1990) (citations omitted), *cert. denied*, 498 U.S. 1094, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991). To support a conviction under section 924(c)(1), the government need only establish that a firearm was present and avail-able for use. *See, e.g., United States v. Horne*, 4 F.3d 579, 587 (8th Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 1121, 127 L.Ed.2d 430 (1994); *United States v. Travis*, 993 F.2d 1316, 1321 (8th Cir.), *cert. denied*, — U.S. —, 114 S.Ct. 229, 126 L.Ed.2d 184 *and*, — U.S. —, 114 S.Ct. 245, 126 L.Ed.2d 198 (1993); *United States v. Deitz*, 991 F.2d 443, 447 (8th Cir.1993).

■ The evidence, when construed in the light most favorable to the government, showed that Velasquez threw a loaded semiautomatic pistol on the sofa as officers entered his residence to execute the search warrant. The officers found more than ninety pounds of marijuana, packaged for distribution, in Velasquez's residence. Thus, the pistol was available for use to protect the marijuana that Velasquez intended to sell. *See United States v. Mejia*, 8 F.3d 3, 5 (8th Cir.1993) (per curiam) (a loaded gun found in an apartment could be used to protect marijuana also found in apartment). Accordingly, we find that the evidence was sufficient for the jury to find that Velasquez had used the firearm during and in relation to a drug trafficking offense. *See Curry*, 911 F.2d at 80 (presence of loaded revolver in same townhouse as cocaine intended for distribution and other drug paraphernalia sufficient to support section 924(c)(1) conviction).

### D. Jury Instructions

■ Both defendants argue that the district court erred by not instructing the jury that a mere buyer-seller relationship is not sufficient to establish a conspiracy. Velasquez, however, did not preserve this issue for appeal because he did not request a buyer-seller instruction. *See, e.g., United States v. Jackson*, 915 F.2d 359, 361 (8th Cir.1990). Although the defendants correctly assert that proof of a buyer-seller relationship is not sufficient to establish a conspiracy, *United States v. Prieskorn*, 658 F.2d 631, 633 (8th Cir.1981), it is proper for the district court to refuse to give such an instruction when the evidence establishes that the drugs have been purchased for further distribution rather than personal use. *See, e.g., United States v. Finch*, 16 F.3d 228, 231 (8th Cir.

1994); *United States v. Turner*, 975 F.2d 490, 497 (8th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1053, 122 L.Ed.2d 360 (1993); *United States v. Figueroa*, 900 F.2d 1211, 1217 (8th Cir.), *cert. denied*, 496 U.S. 942, 110 S.Ct. 3228, 110 L.Ed.2d 675 (1990). Because the defendants in this case presented no evidence that Velasquez planned to purchase a large quantity of marijuana from Quintanilla for any purpose other than distributing it to Mendez, the district court properly refused to give a buyer-seller instruction.

We have considered Velasquez's other arguments concerning the jury instructions and find them to be without merit.

**E. Sentencing Issues**

 The defendants argue that their sentences should be vacated because the district court failed to make factual findings regarding relevant conduct. Federal Rule of Criminal Procedure 32(c)(3)(D) requires the district court to make specific factual findings only if one of the parties objects to a material portion of the PSR. Because neither defendant objected to any portion of the PSRs concerning relevant conduct, the district court did not err in not making factual findings regarding relevant conduct. *See United States v. Montayne*, 996 F.2d 190, 192–93 (8th Cir.1993) (en banc) (holding that district court does not have to make findings and may rely on portions of the PSR to which the parties do not specifically object).

The defendants also challenge their sentences on the ground that the district court improperly held them accountable for between 100 and 400 kilograms (220 and 880 pounds) of marijuana when determining their base offense levels. Because neither defendant raised this issue in the district court, we review the district court's drug quantity determination for plain error. *United States v. Kenyon*, 7 F.3d 783, 785 (8th Cir.1993).

 Quintanilla does not dispute that he was properly held accountable for the seventeen pounds of marijuana seized from his residence. Based upon our review of the record, however, we do not believe that the seventeen pounds seized from Quintanilla's residence reflect the scale of his drug trafficking operation. If the amount of drugs seized do not reflect the scale of the offense, the defendant may also be accountable for drugs documented in his drug records. United States Sentencing Comm'n, *Guidelines Manual* § 2D1.1 comment. (n. 12) (Nov. 1992). Drug records seized from Quintanilla's records indicated that during the course of his drug trafficking scheme he had distributed over 401 pounds of marijuana. Accordingly, we find no plain error in holding Quintanilla accountable for at least 100 kilograms of marijuana.

 Velasquez was properly held accountable for the 150 pounds of marijuana that he had negotiated to sell to Mendez, not simply the marijuana that he had in his possession when his residence was searched. *Id.* ("In an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount."). As Quintanilla's coconspirator, Velasquez may also be held responsible for Quintanilla's sales to other people if those sales were in furtherance of the conspiracy and were reasonably foreseeable to Velasquez. *Id.* § 1B1.3(a)(1)(B). Quintanilla's sale of a large amount of marijuana to other people was reasonably foreseeable to Velasquez. Velasquez had expressed concern about the large number of people carrying bags of marijuana from Quintanilla's residence. Because we find no plain error in concluding that Quintanilla's foreseeable sales of marijuana to other individuals helped to further the objective of a conspiracy to distribute marijuana, we reject Velasquez's challenge to the district court's base offense level determination. *See, e.g., United States v. Lawrence*, 918 F.2d 68, 71 (8th Cir.1990), *cert. denied*, 499 U.S. 941, 111 S.Ct. 1399, 113 L.Ed.2d 455 (1991).

Having considered the other arguments raised in the defendants' briefs, we find them to be without merit.

The judgments are affirmed.