UNITED STATES of America, Appellee,

v.

Ralph Chavous DUKE, also known
as Plookie, also known as
Plukey, Appellant.

No. 93–3711.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 11, 1994.

Decided March 20, 1995.

Rehearing and Suggestion for Rehearing
En Banc Denied May 25, 1995.

Jack S. Nordby, Minneapolis, MN, argued, for appellant.

Denise D. Reilly, Minneapolis, MN, argued (David L. Lillehaug and Jon M. Hopeman, on the brief), for appellee.

Before McMILLIAN, Circuit Judge, McKAY,* Senior Circuit Judge, and BOWMAN, Circuit Judge.

McMILLIAN, Circuit Judge.

Ralph Chavous Duke appeals from a final order entered in the United States District Court[1] for the District of Minnesota denying his motion pursuant to 28 U.S.C. § 2255 for federal post-conviction relief. *United States v. Duke*, No. 4–93–Civ. 10 (D.Minn. Aug. 16, 1993) (Order). For reversal, Duke argues the district court erred in holding that the prosecution's failure to respond accurately to a pre-trial request for the arrest record of an informant and its corresponding use of perjured testimony regarding the informant's arrest record did not require a new trial because there was no reasonable likelihood that the false testimony would have affected the judgment of the jury. For the reasons discussed below, we affirm the judgment of the district court.

## I. BACKGROUND

The facts of this case are set out in detail in this court's opinion on Duke's direct appeal. *See United States v. Duke*, 940 F.2d 1113 (8th Cir.1991). We, therefore, provide only a summary of the facts. The indictment charged Duke with 32 counts of narcotics and firearms violations. After a one-month trial, Duke was convicted of participating in a continuing criminal enterprise to possess and distribute cocaine, aiding and abetting the attempt to possess with intent to distribute 20 kilograms of cocaine, other similar instances of aiding and abetting with regard to smaller amounts, three counts of using or carrying weapons in connection with drug offenses, and conspiracy to possess with in-

---

* The Honorable Monroe G. McKay, Senior United States Circuit Judge for the Tenth Circuit, sitting by designation.

1. The Honorable David S. Doty, United States District Judge for the District of Minnesota.

tent to distribute cocaine. Duke was sentenced to three concurrent life sentences and lesser consecutive sentences. On direct appeal, this court remanded the case with instructions to vacate either the continuing criminal enterprise conviction or the conspiracy conviction on double jeopardy grounds, but affirmed in all other respects. *See id.* at 1121.

The evidence presented at Duke's trial established that he headed a large-scale conspiracy to distribute drugs in the Twin Cities area. The arrest of Duke and a number of his coconspirators was largely the result of a reverse-sting operation conducted by the Drug Enforcement Administration (DEA). A key figure in this operation was Andrew Chambers, a DEA undercover informant, who successfully negotiated a drug deal with one of Duke's sons and one of his nephews. The undercover deal led to Duke's arrest.

## II. DISCUSSION

### A. *Appellate Jurisdiction*

Duke filed a *pro se* motion for federal postconviction relief pursuant to 28 U.S.C. § 2255 in the United States District Court for the District of Minnesota on January 6, 1993. The district court entered final judgment denying his motion on August 16, 1993. Duke then filed a "Motion for Reconsideration" which the district court clerk's office stamped "received" on September 2, 1993. That motion was still pending when, on October 13, 1993, Duke filed a notice of appeal from the August 16, 1993, order. Because of the unusual procedural posture of this case, we find it necessary to consider our jurisdiction.

■ The parties' failure to discuss the question of appellate jurisdiction in their briefs does not preclude our own examination of the question. "[E]very federal court has a special obligation to consider its own jurisdiction." *Thomas v. Basham,* 931 F.2d 521, 523 (8th Cir.1991). Moreover, "jurisdiction issues will be raised sua sponte by a federal court when there is an indication that jurisdiction is lacking, even if the parties concede the issue." *Id.* In the present case we are confronted with two related issues: (1)

whether Duke's motion to reconsider tolled the time for filing a notice of appeal, and (2) if so, whether we should apply Rule 4(a)(4) of the Federal Rules of Appellate Procedure, as amended, retroactively to avoid dismissal of Duke's appeal.

In the past, courts struggled to characterize self-styled "motions for reconsideration" as motions made pursuant to either Rule 59(e) or Rule 60(b) of the Federal Rules of Civil Procedure. *See, e.g., Sanders v. Clemco Indus.,* 862 F.2d 161, 168–69 (8th Cir.1988). Proper characterization was critical because under the version of Rule 4(a)(4) of the Federal Rules of Appellate Procedure in effect prior to December 1, 1993, a timely served Rule 59(e) motion would toll the time for the filing of a notice of appeal but a Rule 60(b) motion would not. *See* Fed.R.App.P. 4(a)(4) (1979 version).

■ A 1993 amendment to Rule 4(a)(4) has eliminated this problem by providing that a Rule 60(b) motion served within 10 days of the entry of judgment also tolls the time for the filing of a notice of appeal. Fed.R.App.P. 4(a)(4)(F). Thus, for purposes of our jurisdictional analysis, we can determine whether Duke's motion for reconsideration tolled the time period for the filing of a notice of appeal without having to decide whether Duke's motion was made pursuant to Rule 59(e) or Rule 60(b). Because, as discussed below, we conclude that Rule 4(a)(4), as amended, should apply retroactively, we will proceed accordingly.

■ If Duke's motion for reconsideration was not served within ten days of the entry of judgment, it would not trigger the tolling effect of Rule 4(a)(4). In such case, his notice of appeal, filed on October 13, 1993, would be effective because the sixty-day period for its filing would have expired on October 16, 1993. Duke's motion for reconsideration was received in the district court clerk's office on September 2, 1993. However, both a Rule 59(e) motion and a Rule 60(b) motion that has a tolling effect under Rule 4(a)(4)(F) need only be "served" within ten days of the entry of judgment. Therefore, September 2 is not necessarily the dispositive date. Furthermore, Rule 5(b) of

the Federal Rules of Civil Procedure provides that service by mail is complete upon mailing.

Additionally, we note that Duke filed his motion for reconsideration *pro se* and while incarcerated. In *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (*Houston* ), the Supreme Court created what might be called the "prison mailbox rule." The Supreme Court held as timely filed a *pro se* notice of appeal from the denial of habeas relief deposited by an inmate with prison authorities for mailing within the thirty-day period fixed by Rule 4(a) of the Federal Rules of Appellate Procedure for the filing of a notice of appeal. *Id.* at 270, 108 S.Ct. at 2382. The Supreme Court stated that "the Court of Appeals had jurisdiction over petitioner's appeal because the notice of appeal was filed at the time petitioner delivered it to the prison authorities for forwarding to the court clerk." *Id.* at 276, 108 S.Ct. at 2385. The rule in *Houston* is now restated in the Federal Rules of Appellate Procedure. *See* Fed.R.App.P. 4(c). Rule 4(c) provides: "If an inmate confined in an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely filed if it is deposited in the institution's internal mail system on or before the last day for filing." We believe that the rationale of *Houston* and the new Rule 4(c) applies with equal force to a motion which, under Rule 4(a)(4), tolls the time for the filing of a notice of appeal. *Accord Smith v. Evans*, 853 F.2d 155, 162 (3d Cir.1988). Thus, we hold that Duke's motion for reconsideration should be deemed timely served if it was delivered to prison authorities for mailing within the ten-day time period of Fed.R.Civ.P. 59(e) and Fed R.App.P. 4(a)(4)(F).

Upon review of the district court record, we note that Duke filed three "Certificates of Service" with his motion to reconsider. The three certificates of service were signed by Duke with the typewritten date of August 30, 1993. Thus, assuming that the August 30 date is correct and applying the method of calculating time provided in Rule 6(a) of the Federal Rules of Civil Procedure,[2] it appears that Duke's motion for reconsideration was timely served on the tenth day after entry of judgment and tolled the period for the filing of a notice of appeal.

Under the version of Federal Rule of Appellate Procedure 4(a)(4) in effect prior to December 1, 1993, any notice of appeal filed before the disposition of a tolling motion would be a nullity. However, the amended version of Rule 4(a)(4) that went into effect on December 1, 1993, provides that when a notice of appeal is filed before the trial court rules on a pending tolling motion, the notice of appeal lies dormant until the trial court disposes of the pending motion. Upon such disposition, the notice becomes effective.

The Supreme Court has stated that the 1993 amendments to the rules were to apply to all proceedings in appellate cases commenced after December 1, 1993, and insofar as "just and practicable" to all proceedings in appellate cases then pending. 113 S.Ct. 819 (1992). Several circuit courts of appeal have used this "just and practicable" language to apply Rule 4(a)(4), as amended, retroactively. *Schroeder v. McDonald*, 41 F.3d 1272 (9th Cir.1994); *Barber v. Whirlpool Corp.*, 34 F.3d 1268 (4th Cir.1994); *Narey v. Dean*, 32 F.3d 1521 (11th Cir.1994); *Burt v. Ware*, 14 F.3d 256 (5th Cir.1994) (*Burt* ). In *Hulsey v. Sargent*, 15 F.3d 115 (8th Cir.1994), we applied the earlier version of Rule 4(a)(4) in dismissing an appeal for lack of jurisdiction, even though the appeal was pending as of December 1, 1993. However, the determination of when it is "just and practicable" to retroactively apply Rule 4(a)(4), as amended, is necessarily a case-by-case consideration.

In the present case, the government itself concedes the ripeness of the appeal. *See* Brief for Appellee at 42 n. 11. Moreover, both parties have fully briefed and argued the merits. Therefore, we see no reason why Duke should be caught in the procedural trap which Rule 4(a)(4), as amended, was meant

---

2. Rule 6(a) of the Federal Rules of Civil Procedure provides in relevant part: "When the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation."

to eliminate. *See Burt,* 14 F.3d at 260. Consequently, if Duke's motion for reconsideration was timely served, Duke's notice of appeal would not be a nullity but merely dormant until the district court ruled on the pending motion for reconsideration. The district court denied this motion on January 20, 1995. *United States v. Duke,* Civil No. 4–93–10 (D.Minn. Jan. 20, 1995).

Because we hold that it is just and practicable to retroactively apply Rule 4(a)(4), as amended, to the present case, dismissal of the appeal would be inappropriate. We therefore conclude that it is proper for this court to consider the merits of this appeal. Our jurisdiction was established either on October 13, 1993, or January 20, 1995.

### B. *Use of False Testimony by the Prosecution.*

Duke's main contention is that newly discovered evidence demonstrates that Chambers, a principal government informant and witness, committed perjury with regard to his criminal record, and further, that the prosecutor failed to inform Duke's trial counsel about Chambers' true background while, at the same time, using his false testimony to bolster his credibility. Duke argues that the prosecutor's use of this perjured testimony was at least negligent and possibly deliberate. Thus, he argues that the district court erred in denying his § 2255 motion seeking a new trial.

At trial, an Assistant United States Attorney made the following remarks about Chambers in his opening statement: "Andrew Chambers is a young man who works as a confidential informer. He's never been arrested, he's never been convicted of a crime, he doesn't use drugs, he doesn't even drink." Appellant's Appendix at 193–94. Chambers himself testified that he had never been arrested or convicted. *Id.* at 191–97. Robert Bushman, a member of the Minnesota Bureau of Criminal Apprehension who was assigned to a DEA task force, also testified that Chambers was chosen for their operation because, among other reasons, he was trustworthy and did not have a criminal record. *Id.* at 200–01.

Duke now alleges that Chambers had been arrested a number of times and convicted once in 1978. Duke also claims that in another federal trial, Chambers admitted that he had lied in court about his criminal record on previous occasions. Duke submitted documents with his § 2255 motion which support these allegations. Duke argues that the testimony of Chambers was crucial to the prosecution's case and that the prejudice he has suffered by not having the opportunity to confront Chambers with this type of impeaching evidence merits a new trial. In other words, Duke argues that the judgment should be vacated and set aside because his convictions were obtained through prosecutorial misconduct that violated his right to due process.

▬▬▬ We apply the same standards of review in a § 2255 proceeding as in a habeas corpus proceeding. *Holloway v. United States,* 960 F.2d 1348, 1351 (8th Cir.1992). In such proceedings, we review *de novo* a district court's conclusions regarding issues of law as well as issues involving mixed questions of law and fact. *Id.* To affirm the district court when it denies a § 2255 motion without an evidentiary hearing, we must be persuaded by our *de novo* review that "the motion and the files and records of the case conclusively show that [the movant] is entitled to no relief." *Id., quoting* 28 U.S.C. § 2255.

▬▬▬ The decision of whether to grant or deny a new trial motion based on newly discovered evidence is governed by different standards which depend, in large part, on the amount of prosecutorial misconduct, if any, that occurred in the underlying case. Where the newly discovered evidence raised in a § 2255 motion comes from a neutral source and the prosecution did not know, or have reason to know, of its existence, the district court must apply a substantive standard that includes five prerequisites: (1) the evidence must have been discovered after the trial; (2) the failure to discover the evidence must not be attributable to a lack of diligence on the part of the petitioner; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material; and (5) the evidence must be likely to produce an acquit-

tal if a new trial is granted. *English v. United States,* 998 F.2d 609, 611 (8th Cir.) (*English* ), *cert. denied,* —— U.S. ——, 114 S.Ct. 573, 126 L.Ed.2d 472 (1993).

A standard more favorable to the defendant is applied, however, if a *Brady* [3] violation has occurred. In *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." In *United States v. Agurs,* 427 U.S. 97, 111, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342 (1976) (*Agurs* ), the Supreme Court explained the need for a different new trial standard in the case of a *Brady* violation: "If the standard applied to the usual motion for a new trial based on newly discovered evidence were the same when the evidence was in the State's possession as when it was found in a neutral source, there would be no special significance to the prosecutor's obligation to serve the cause of justice." The Supreme Court defined the scope of this obligation in *United States v. Bagley,* 473 U.S. 667, 675, 105 S.Ct. 3375, 3379–80, 87 L.Ed.2d 481 (1985) (*Bagley* ), where it stated that the *Brady* rule was based on the requirement of due process and that "the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial."

■ To prove a *Brady* violation, a defendant must show that the prosecution suppressed the evidence, the evidence was favorable to the accused, and the evidence was material to the issue of guilt or punishment. *Prewitt v. Goeke,* 978 F.2d 1073, 1078 (8th Cir.1992). Evidence is "material" for purposes of the rule in *Brady* "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Id.* Impeachment evidence, as well as exculpatory evidence, falls within the *Brady* rule, and it is subjected to the same materiality analysis. *See id.* at 676, 105 S.Ct. at 3380; *United States v. Willis,* 997 F.2d 407, 412 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 704, 126 L.Ed.2d 670 (1994).

Yet another standard applies to a motion for new trial based on newly discovered evidence that a conviction was obtained by the prosecutor's knowing use of perjured testimony. *See Kirkpatrick v. Whitley,* 992 F.2d 491, 497 (5th Cir.1993) (noting the difference between the *Brady* standard and the "knowing use of perjury" standard and characterizing the latter as "considerably less onerous"); *see also United States v. Endicott,* 869 F.2d 452, 456 (9th Cir.1989). The Supreme Court has held that a conviction so obtained "must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Agurs,* 427 U.S. at 103, 96 S.Ct. at 2397; *see Napue v. Illinois,* 360 U.S. 264, 272, 79 S.Ct. 1173, 1178–79, 3 L.Ed.2d 1217 (1959). The Supreme Court subsequently described this test as a materiality standard under which "the fact that the testimony is perjured is considered material unless failure to disclose it would be harmless beyond a reasonable doubt." *Bagley,* 473 U.S. at 680, 105 S.Ct. at 3382. In *Napue v. Illinois,* the Court explained that the principle that the prosecution may not knowingly use false evidence did not cease to apply "merely because the false testimony goes only to the credibility of the witness" because the jury's estimate of a given witness "may well be determinative of guilt or innocence." 360 U.S. at 269, 79 S.Ct. at 1177.

■ In *United States v. Tierney,* 947 F.2d 854, 860–61 (8th Cir.1991), we noted that, when a court finds that the government knowingly, recklessly, or negligently used false testimony, the *Agurs* "any reasonable likelihood" standard applies. More recently, we have stated that before we can apply this relaxed standard, the defendant must establish that (1) the testimony was in fact perjured and (2) the prosecuting officers knew,

---

**3.** *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

or should have known, of the perjury at the time the testimony was presented. *English,* 998 F.2d at 611.

■ In the present case, the district court made no explicit finding that Chambers had committed perjury when he testified that he had never been arrested or convicted. The record, however, clearly demonstrates that Chambers did in fact perjure himself at Duke's trial when he testified that he had never been arrested or convicted. With regard to the second part of Duke's burden, there is no evidence that the prosecution actually knew that Chambers was lying when he testified that he had never been arrested or convicted. However, it is undisputed that the prosecution told Duke's trial counsel that Chambers did not have an arrest record in response to a specific pre-trial inquiry concerning Chambers' arrest record.[4] Moreover, in its memorandum in opposition to Duke's § 2255 motion, the government responded to Duke's argument that his trial counsel was ineffective for relying on the prosecution's misrepresentation as to Chambers' lack of an arrest record with the following argument:

> [I]t was reasonable for [Duke's trial counsel] to consult the government in order to obtain Chambers' arrest record and it was reasonable for him to rely on that information when he knew that the government is under an affirmative to duty reveal such information. [citations omitted] Further, it was reasonable for [trial counsel] to determine that the government's background check was at least as thorough as any he could complete.

Appellant's Appendix at 236. Hindsight reveals that such reliance may have been reasonable but mistaken. The government's argument to the district court belies its present claim of innocent use of Chambers' false testimony. The prosecution told Duke's trial counsel that Chambers had no arrest record, and it now claims that it never knew of Chambers' prior arrests. If this is true, the prosecution seriously misled Duke's trial counsel. *See Bagley,* 473 U.S. at 682–83, 105 S.Ct. at 3384 ("[T]he more specifically the defense requests certain evidence, thus putting the prosecutor on notice of its value, the more reasonable it is for the defense to assume from the nondisclosure that the evidence does not exist, and to make pretrial and trial decisions on the basis of this assumption."). If, following the government's own logic, defense counsel acted reasonably in relying on the thoroughness of its background check without making further independent inquiry, we think it is reasonable for this court to conclude that the prosecution should have known of the falsity of Chambers' testimony. Thus, we hold that the standard for knowing, reckless, or negligent use of perjury should apply to the question of whether Duke is entitled to post-conviction relief.

The application of this relaxed standard in the present case is not the result of the prosecution's failure to seek out exculpatory evidence for the defendant; rather, it is the result of the prosecution's misrepresentation of Chambers' criminal record and the concomitant introduction of false testimony. If defense counsel should, in the government's view, be able to rely solely on a prosecution background check of its own witness, the prosecution's conduct will be reviewed under this relaxed standard where the prosecution's inaccuracy not only misleads the defense but also results in the introduction of related false testimony by a prosecution witness.[5]

---

4. This is unfortunately not the first case we have seen where the government has failed to successfully complete a routine background check. Such carelessness is unacceptable, particularly in light of the technological advances which make record retrieval readily accessible. We strongly condemn the government's haphazard approach to its own trial preparation and to its duty to serve and facilitate the truth-finding function of the courts. *See United States v. Bernal–Obeso,* 989 F.2d 331, 333–34 (9th Cir.1993) ("A prosecutor who does not appreciate the perils of using rewarded criminals as witnesses risks compromising the truth-seeking mission of our criminal justice system. Because the government decides whether and when to use such witnesses, and what, if anything to give them for their service, the government stands uniquely positioned to guard against perfidy. By its actions, the government can either contribute to or eliminate the problem.") (citations omitted).

5. Because we have concluded that it is appropriate to apply the knowing use of perjury standard in the present case, we need not consider whether the undisclosed evidence here can be "sup-

C. *The Effect of Chambers' False Testimony.*

It is important to recognize, as the government has correctly noted, that Chambers testified about events proving only one of eleven counts, Count Two for aiding and abetting the attempt to possess with intent to distribute 20 kilograms of cocaine. Chambers' testimony with regard to the other counts was essentially collateral and cumulative. Focusing our analysis on the evidence submitted on Count Two, there was considerable evidence, apart from Chambers' testimony, of Duke's involvement in the effort to purchase the twenty kilograms of cocaine from Chambers.

██ Duke's nephew, Loren Duke (Loren), testified that Duke's son, Ralph Nunn (Nunn), told him that the money for the twenty kilos came from his father. On May 17, 1989, Nunn told Loren that someone (Chambers) was in town with twenty kilos and "that his father told him to go get the twenty kilos because he wanted to buy them." Later, when Nunn went to Loren's house, Loren said that Nunn "told [him] that he didn't have no [sic] money to get the stuff—the only reason why he was going to get the stuff was because his dad wanted it." Nunn also told Loren Duke that it was his father's money they were counting at Loren's house just before they returned to the hotel to buy the twenty kilograms of cocaine. *See United States v. Duke*, 940 F.2d at 1117–18.

Additionally, we find it significant that much of Chambers' testimony was corroborated by audio and video surveillance. *See Endicott*, 869 F.2d at 456 (no reasonable likelihood false testimony as to witness payments would have affected the judgment of the jury where tape recording of contacts between witness and defendant presented

definitive corroboration); *see also United States v. Risken*, 788 F.2d 1361, 1375 (8th Cir.) (failure to disclose under *Brady* an understanding between FBI and witness about post-trial payment was not sufficient to undermine confidence in the jury's verdict where witness testimony was strongly corroborated by tape recordings), *cert. denied*, 479 U.S. 923, 107 S.Ct. 329, 93 L.Ed.2d 302 (1986); *accord United States v. Janis*, 831 F.2d 773, 776 (8th Cir.1987), *cert. denied*, 484 U.S. 1073, 108 S.Ct. 1046, 98 L.Ed.2d 1009 (1988). In an audio tape played for the jury, Nunn told Chambers that his father controlled all of the dope business in the Twin Cities, that his father distributed 75 kilograms of cocaine every month or two, that his father felt fine about the deal between Nunn and Chambers, and that his father might want to get some of the cocaine. Furthermore, two of the most damaging exhibits—the videotapes of Chambers' meetings with Nunn in the parking lot of a hotel and in a hotel room—were introduced through the testimony of Agent Bushman before Chambers testified. In these tapes, Nunn stated, among other things, that his father usually got his cocaine directly from Colombians.

We also note that Duke's trial counsel impeached Chambers' credibility at trial with evidence that he had failed to file income tax returns for the previous six years and paid tax on none of the $100,000 he had been paid by the DEA for his undercover work on other cases. The defense was also able to suggest bias toward the prosecution because Chambers had been paid over $29,000 for his work in this and other Minnesota prosecutions. Further, the district court instructed the jury that "[t]he testimony of an informer who provides evidence against a defendant for pay, or for immunity from punishment, or for personal advantage or vindication, must

pressed" for *Brady* purposes, even though the prosecution may not have had actual knowledge of such evidence. *See United States v. Jones*, 34 F.3d 596, 599 (8th Cir.1994) ("*Brady* requires the prosecution to disclose to the defendant only evidence in the prosecution's possession."), *cert. denied*, — U.S. —, 115 S.Ct. 1701, 131 L.Ed.2d 563 (1995); *compare United States v. Krauth*, 769 F.2d 473, 476 (8th Cir.1985) ("*Brady* requires that the prosecution furnish the defendant with all exculpatory information which is in the prose-

cution's possession or reasonably available to them."); *see also United States v. Young*, 20 F.3d 758, 764 (7th Cir.1994) (suppression of evidence assumed where prosecution keeps itself in ignorance or compartmentalizes information about different aspects of the case); *United States v. Perdomo*, 929 F.2d 967, 971 (3d Cir.1991) (holding that non-disclosure was inexcusable where the prosecution had not sought out information readily available to it).

be examined and weighed by the jury with greater care than the testimony of an ordinary witness." Thus, the jury was well aware of the possibility that self-interest might have influenced Chambers' testimony.

Under these circumstances, we hold that there is no reasonable likelihood that Chambers' false testimony affected the judgment of the jury. In other words, the failure to disclose the fact that Chambers gave false testimony about his arrest record was harmless beyond a reasonable doubt. *See United States v. Quintanilla,* 25 F.3d 694, 698 (8th Cir.) (holding, in the context of an alleged *Brady* violation, that the undisclosed evidence of a witness's criminal record was cumulative and would not have significantly enhanced the defendants' cross-examination), *cert. denied,* —— U.S. ——, 115 S.Ct. 457, 130 L.Ed.2d 365 (1994); *Janis,* 831 F.2d at 776 (holding that government's failure to disclose the criminal record of informant did not violate due process where defendant was able to impeach informant); *see also United States v. Abello–Silva,* 948 F.2d 1168, 1181 (10th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 107, 121 L.Ed.2d 65 (1992).

## III. CONCLUSION

Having carefully reviewed the record, we conclude that the district court did not err in denying post-conviction relief based on the newly discovered evidence of Chambers' arrest record because it is not reasonably likely that the informant's false testimony would have affected the judgment of the jury in the present case.

For the reasons discussed above, the judgment of the district court is affirmed.