**Daniel Ray BENNETT, Plaintiff,**

v.

**DRUG ENFORCEMENT ADMINISTRATION, Defendant.**

No. Civ.A. 98–745(GK).

United States District Court, District of Columbia.

June 30, 1999.

**38**

Brian J. Sonfield, U.S. Attorney's Office, Washington, DC, Harry Dean Steward, Federal Public Defender, Santa Ana, CA, for plaintiff.

### MEMORANDUM OPINION

KESSLER, District Judge.

Plaintiff Daniel Ray Bennett brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking to compel disclosure of records from the Drug Enforcement Administration ("DEA"). This matter is before the Court on Defendant's Motion for Summary Judgment [# 13]. Upon consideration of the Motion, Opposition, Reply, and the entire record herein, for the reasons discussed below, Defendant's Motion for Summary Judgment [# 13] is **granted in part and denied in part.**

## I. BACKGROUND[1]

On August 25, 1997, Plaintiff sent DEA a letter requesting information about DEA informant Andrew Chambers. Spe-

cifically, Plaintiff requested chambers' criminal history (including records of arrests, convictions, warrants, or other pending criminal cases), records of all case names, numbers, and judicial districts where he testified under oath, a list of all monies paid to him in his capacity as DEA informant, all records of instances where DEA intervened on his behalf to assist him in avoiding criminal prosecution, and all records of administrative sanctions imposed on him for dishonesty, false claims, or other deceit.

On September 5, 1997, DEA neither confirmed nor denied the existence of any records on Chambers,[2] and informed Plaintiff that he would need to provide either proof of death or an original authorization from Chambers in order for the request to be processed. Plaintiff appealed DEA's action to the Department of Justice Office of Information and Privacy ("OIP"), and on November 4, 1997, OIP notified him that his appeal would be handled in the order in which it was received.

Plaintiff subsequently brought this suit on March 24, 1998. In its answer to Plaintiff's Complaint, DEA indicated it would review Plaintiff's request one more time. On September 31, 1998, DEA informed Plaintiff that it had processed thirty-three pages of material responsive to his request, and released one page in its entirety. DEA withheld the remaining thirty-two pages in their entirety pursuant to Exemptions 7(C) and 7(F), as well as Privacy Act Exemption (j)(2). 5 U.S.C. §§ 552(b)(7)(C) and (F); 5 U.S.C. § 552a(j)(2).

## II. STANDARD OF REVIEW

Under Fed.R.Civ.P. 56, a motion for summary judgment shall be granted if the

---

**1.** Pursuant to Local Rule 108(h), "[i]n determining a motion for summary judgement, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." Thus, the Court

takes these facts from Defendant's Statement of Material Facts Not in Genuine Dispute.

**2.** In the Answer to the Complaint, DEA acknowledged Chambers' status as a DEA informant.

pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgement as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgement, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505.

## III. ANALYSIS

■■■ FOIA reflects "a general philosophy of full agency disclosure", *Department of Air Force v. Rose*, 425 U.S. 352, 360–361, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976), in order "to facilitate public access to Government documents". *United States Dep't of State v. Ray*, 502 U.S. 164, 173, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991) (citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151, 110 S.Ct. 471, 107 L.Ed.2d 462 (1989)). "[D]isclosure, not secrecy, is the dominant objective" of FOIA. *Id.* at 361, 96 S.Ct. 1592. The Act "requires agencies to comply with requests to make their records available to the public, unless the requested records fall within one or more of nine categories of exempt material." *Oglesby v. U.S. Dept. of Army*, 79 F.3d 1172, 1176 (D.C.Cir.1996) (citing 5 U.S.C. § 552(a), (b)).

In its Opposition, Plaintiff challenges the adequacy of DEA's search for material responsive to his request, as well as many of DEA's withholdings under Exemptions 7(C) and 7(F).

### A. Adequacy of Search

■■■ FOIA requires an agency responding to a FOIA request to conduct a reasonable search using methods which can be reasonably expected to produce the information requested. *Campbell v. United States Dep't of Justice*, 164 F.3d 20, 27 (D.C.Cir.1998). The burden of proof is on the agency to show that its search was reasonably calculated to uncover all relevant documents. *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C.Cir.1994). In meeting this burden, the agency may submit affidavits or declarations that explain, in reasonable detail, the scope and method of the agency's search; "in the absence of countervailing evidence or apparent inconsistency of proof, [such affidavits] will suffice to demonstrate compliance with the obligations imposed by the FOIA." *Perry v. Block*, 684 F.2d 121, 127 (D.C.Cir.1982).

DEA submitted the affidavit of Kevin Janet, Acting Chief of the Litigation Unit of the Freedom of Information Section at DEA, who explained the procedure by which the responsive records were located. According to Janet, Chambers' coded informant number was used as a search criterion in DEA's automated Confidential Source System ("CSS"), and the search produced a list of all DEA field offices maintaining files on Chambers. Janet Decl. at 2–3.

Janet then contacted the coordinators of all these field offices, provided them copies of Plaintiff's FOIA request, and requested they search their files for all responsive material. *Id.* The result of these searches was thirty-three pages of responsive material: five pages containing Chambers' criminal record, twenty-seven pages containing lists of monies paid to Chambers, and one page recording an instance in which DEA intervened on Chambers' behalf in criminal matters. *Id.* at 4–5. Janet explained that no records of case names, numbers, or judicial districts where Chambers had testified were located because DEA did not track informant activity in that manner. *Id.* at 4. Janet also explained that no records were located regarding any administrative sanctions imposed on Chambers. *Id.* at 5.

Plaintiff specifically challenges the adequacy of DEA's search with respect to three requests: records of case names, numbers, and judicial districts where Chambers has testified; records of in-

stances where DEA intervened on his behalf; and records of administrative sanctions imposed.

▬ In his declaration, Janet stated that DEA did not track informant activity by case names, numbers, and judicial districts, but tracked information only "as it pertain[ed] to specific criminal investigations." Janet Decl. at 4. Although the agency is only required to do a reasonable search, it cannot limit itself to one method or system of searching for documents if the requesting party has "established a sufficient predicate to justify searching for a particular type of record". *Campbell,* 164 F.3d at 28. Plaintiff has established such a predicate: DEA keeps track of which criminal investigations Chambers has participated in, and Plaintiff has requested information on whether Chambers' participation in these investigations included testifying in court. Janet has not explained why he did not search in the specific investigation files for each case to identify any material responsive to Plaintiff's request. In his supplemental declaration, Janet stated that he searched "any and all records pertaining to court room appearances by Chambers", but did not explain what these records were, or whether the search included files of investigations in which Chambers participated. Janet Suppl.Decl. at 3. An affidavit must give reasonable detail of the scope of the search in order to satisfy the agency's burden of proof; simply stating that "any and all records" were searched is insufficient. DEA has thus not met its burden of proving that its search for this particular type of record was reasonable.

▬ Plaintiff also argues that DEA must have more than one record of instances where it intervened on Chambers'

behalf, because "[s]omeone had to have intervened on Chambers' behalf [more times than DEA can account for], as he was never prosecuted for tax fraud, despite not filing returns for six years ...". Pl.'s Opp'n at 13–14. Plaintiff does not, however, offer anything more in the way of "countervailing evidence or apparent inconsistency of proof" to undermine the adequacy of Janet's search for such records.[3] *Perry* 684 F.2d at 127. "Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." *SafeCard Serv., Inc. v. SEC,* 926 F.2d 1197, 1201 (D.C.Cir. 1991).

▬ Plaintiff finally argues that DEA's search for records of administrative sanctions imposed on Chambers is inadequate. In support of its argument, Plaintiff quotes a portion of a transcript from a case in Minnesota, where a DEA agent admitted that part of Chambers' intended payment for a previous case was withheld because Chambers perjured himself while testifying.[4] Plaintiff also cites to a letter·from the United States Attorney's Office in Los Angeles, which states that because a dispute arose in that office as to how Chambers spent and accounted for the money he was paid, his services were no longer being used in Los Angeles. Pl.'s Ex. C at 1.

In response, Janet merely reasserted that he searched for records of administrative sanctions, but found none. Janet Suppl.Decl. at 2. He did not explain or dispute the inconsistency between his statements and the information Plaintiff provided. Consequently, DEA has not met its burden of proving that its search for these records was reasonable.

---

3. In his declaration, Janet offered as a possible explanation for the lack of such records the fact that Chambers often participated in investigations on a voluntary basis, as opposed to participating in exchange for leniency with respect to pending criminal charges. Janet Suppl.Decl. at 3.

4. Plaintiff does not give the name or case number of the Minnesota case to which he refers, but merely indicates that the testimony is that of DEA Agent Michael Stanfill, and was given on March 20, 1997 in Arapahoe County Court. Pl.'s Opp'n at 14.

## B. Government's Withholdings Under FOIA Exemptions

In his declaration, Janet stated that thirty-two out of the thirty-three pages of responsive material were withheld in their entirety under Exemptions 7(C) and 7(F).[5] Specifically, Janet stated that Chambers' criminal records were being withheld pursuant to Exemption 7(C), because disclosure would constitute an unwarranted invasion of his personal privacy, given the humiliation, stigmatization, and embarrassment that could result from such disclosure. Janet Decl. at 6. Janet stated that Chambers' payment records were being withheld pursuant to Exemption 7(C), because disclosure would reveal the purpose, duration, and scope of Chambers' participation in criminal investigations, and such disclosure would bring with it an invasion of personal privacy because of the stigmatization attached to being a government informant. *Id.* at 7. Janet stated that DEA criminal case file numbers appearing on the payment records were being withheld pursuant to Exemption 7(C) because of the possible unwarranted invasion of the privacy of any individuals identified from those file numbers. *Id.* Finally, Janet stated that the names of DEA Special Agents were being withheld, pursuant to Exemptions 7(C) and 7(F), not only because of the unwarranted invasion of the personal privacy of the agents, but also because of the possible threat to the lives of any agents in their ongoing criminal investigations. *Id.* at 7–8.

This case is unlike the typical FOIA case, which generally is brought by a prisoner wishing to obtain information protected by personal privacy exemptions in order to challenge his conviction. In this case, Plaintiff wishes to uncover alleged DEA misconduct in relation to Chambers. If true, and the Government does not in any of their papers deny they are not, Plaintiff's allegations suggest that Chambers is the highest paid confidential informant in DEA history (having received perhaps as much as $4 million for his services), despite a criminal record, frequent perjury, administrative sanctions, and specific targeting of African American communities. Consequently, this case is very different from *Tanks v. Huff,* 1996 WL 293531 (D.D.C. May 28, 1996), which the Government argues is directly on point merely because it involved the same confidential informant. In *Tanks,* the plaintiff sought information about Chambers that directly related to the plaintiff's criminal case. Plaintiff in this case merely wishes to expose the allegedly illegal activities of the DEA and its informant Chambers.

Plaintiff argues that the withholding of Chambers' criminal record was improper, because although there is a privacy interest against disclosing such criminal "rap sheets", the privacy interest is outweighed by the great public interest in shedding light on the activities of DEA, which employed Chambers and paid him substantially despite his criminal history.

The Supreme Court has held that there is a very high privacy interest in compilations of criminal records. *United States Dep't of Justice v. Reporters Comm. For Freedom of Press,* 489 U.S. 749, 780, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). However, the Supreme Court also affirmed that "the FOIA's central purpose is to ensure that the Government's activities be opened to the sharp eye of public scrutiny ... [and o]fficial information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose". *Id.* at 773–744, 109 S.Ct. 1468. More importantly, the "basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v.*

---

5. It is undisputed that DEA has met the threshold requirement for reliance on Exemption 7, which is that the records must be compiled for law enforcement purposes. 5 U.S.C. § 552(b)(7).

*Robbins Tire & Rubber Co.*, 437 U.S. 214, 242, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978).

Our Circuit Court of Appeals has reached a middle ground with respect to conflicts between the public and private interests. The Court of Appeals held that when government misconduct is alleged to justify disclosure, the public interest is insubstantial without compelling evidence that the agency is involved in illegal activity, and that the information sought is necessary to confirm or refute that evidence. *Quinon v. FBI*, 86 F.3d 1222, 1231 (D.C.Cir.1996).

■ Plaintiff and his counsel have already conducted significant research on the many instances in which Chambers has perjured himself about his criminal record, and the government's apparent complacency about this conduct. The information uncovered by Plaintiff is very compelling, suggesting extensive government misconduct, and the information sought is necessary to confirm whether Plaintiff's findings are backed by the record. Furthermore, it is clear from the far-reaching and serious consequences of the activities and collaboration of Chambers and DEA that there is a substantial public interest in exposing any wrongdoing in which these two parties may have engaged. This public interest can only be served by the full disclosure of Chambers' rap-sheet, about which he has frequently testified, although not always truthfully,[6] in open court around the country. Consequently, Defendant's withholding of Chambers' criminal record under Exemption 7(C) was improper.

Plaintiff also argues that the withholding of Chambers' payment records was improper. Plaintiff acknowledges that privacy interests would require the withholding of some of the information on these records, but maintains that he would be satisfied if all information was redacted from the records except for the dates and payment amounts. Plaintiff argues that Chambers waived his privacy concerns by testifying in open court about some of the payments he received from DEA.

■ Under normal circumstances, the fact that Chambers has testified in court as to some of the amounts he has been paid would not diminish his privacy interests in the payment records retained by DEA, *Reporters Comm.*, 489 U.S. at 762–63, 109 S.Ct. 1468. Chambers, however, is not the usual government informant. He appears to have made a career out of serving as a government informant and, if Plaintiff's allegations are true, he has earned substantially more than the vast majority of other, more traditional, federal employees. By choosing to "work" as a regular government informant, and by testifying about his activities and "earnings" in open court, Chambers has chosen to give up his personal privacy interests to this information.

■ Plaintiff's research further suggests that Chambers has earned as much as $4 million for serving as a government informant. Given the compelling evidence Plaintiff has uncovered,[7] suggesting mas-

---

**6.** *See United States v. Duke*, 50 F.3d 571, 578, n. 4 (8th Cir.1995), *cert. denied*, 516 U.S. 885, 116 S.Ct. 224, 133 L.Ed.2d 154 (1995) ("The record .. clearly demonstrates that Chambers did in fact perjure himself at Duke's trial when he testified that he had never been arrested or convicted ... This is unfortunately not the first case we have seen where the government has failed to successfully complete a routine background check."); *see also United States v. Ransom*, 990 F.2d 1264, 1993 WL 100158, *1 (9th Cir.1993) ("Chambers's credibility [at trial] already was undermined significantly by his trial admission that he had

lied in previous cases while testifying as a government witness.").

**7.** One media article uncovered by Plaintiff outlines in dismaying detail the alleged misconduct Chambers and DEA have engaged in. Chambers has allegedly been involved in more than 150 federal drug cases in thirteen years, resulting in more than 300 arrests. Pl.'s Ex. B at 2. Chambers sometimes works on a percentage basis, collecting up to 25% of the value of the drugs and cash seized from sting operations in which he is involved. *Id.* Furthermore, there is evidence that Chambers does not pay taxes on his "earnings", and that

sive government misconduct, the public interest in disclosure of this information far outweighs any privacy interest Chambers may have. Consequently, DEA improperly withheld the dates and payment amounts from disclosure pursuant to Exemption 7(C).

█ Finally, with respect to the names of DEA Special Agents, withheld pursuant to Exemptions 7(C) and 7(F), Plaintiff does not challenge DEA's withholdings. Not only is that information irrelevant to Plaintiff's search request, but the disclosure of the names of DEA Agents would result in an unwarranted invasion of their personal privacy. Even more importantly, the disclosure of those names carries a great risk of disruption to those DEA Agents' ongoing criminal investigations, and possibly a threat to the lives of those DEA Agents from past or present targets of their criminal investigations. Consequently, DEA's withholding of the names of DEA Special Agents under Exemptions 7(C) and 7(F) was proper.

## IV. CONCLUSION

Because Defendant has not met its burden of proving that its search was reasonable with respect to locating records of case names, numbers, and judicial districts where Chambers has testified, as well as records of administrative sanctions imposed on Chambers, this case is remanded to the agency for further search for such records. Defendant has also failed to adequately justify its withholdings, under Exemptions 7(C), of Chambers' criminal record and the dates and amounts he was paid for serving as a DEA informant, and on remand Defendant must release this information. Defendant has, however, adequately justified its redaction of the names of DEA Special Agents, under Exemptions 7(C) and 7(F). Defendant's Mo-

tion for Summary Judgment is thus **granted in part and denied in part.**

DEA has not taken steps to ensure he does. *Id.* at 3, 4; *see also Duke,* 50 F.3d at 579; Pl.'s Opp'n at 13–14; Pl.'s Ex. A at 1, 3–4, 9, 13, 14, 17. There is also evidence that DEA has been less than forthright about Chambers' activities and criminal record. Pl.'s Ex. A at 5, 16, 19. Defendant has not denied any of Plaintiff's allegations.